Charles CHAPMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 44105.

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

Will Gray, Houston (on appeal only), for appellant.

Carol S. Vance, Dist. Atty., Joe S. Moss, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for being an accomplice to the offense of robbery by assault. The punishment was assessed by the jury at 11 years.

The indictment alleged a robbery was committed by David Lee Campbell and John Anthony Leslie, and that prior to the robbery the appellant Chapman and John Odom advised, commanded and encouraged Campbell and Leslie to commit the offense.

Appellant's first conviction was reversed as a result of the trial court's failure to instruct the jury on the law relating to the testimony of an accomplice witness. 446 S.W.2d 326. See also Odom v. State, Tex.Cr.App., 438 S.W.2d 912, where the evidence was held insufficient to corroborate the accomplice witness.

In this appeal the appellant challenges the sufficiency of the evidence to sustain his conviction as an accomplice to the robbery and to show that prior to the robbery he "advised, commanded and encouraged" the principals, Campbell and Leslie, to commit the robbery which was shown to have occurred on May 23, 1966; that the evidence fails to corroborate Angelia Campbell, an accomplice witness, as a matter of law. He also vigorously urges that the court erred in admitting an oral as well as a written statement allegedly made by Campbell to Officer Hadley "in the early part of June, 1966" out of the appellant's presence.

Turning first to the question of the sufficiency of the evidence, we observe that

Bennie Eileen Crafton testified she and her husband owned the J. C. Supermarket in Harris County, Texas, and that on May 23, 1966, she was robbed at gunpoint at the store of approximately $13,000 by Campbell and Leslie and only the two men participated in the robbery. Leon Gurka, a store employee, who was forced to assist in carrying the money to the getaway car, corroborated Mrs. Crafton's testimony. The car was found abandoned several blocks away with some of the purloined money still in it.

The witness Bonham testified that some time before the date of the alleged offense, Attorney Odom rented office space from him and that the appellant Chapman was Odom's law clerk.

It was shown that on the date of the robbery Angelia Gerring, who later married Campbell, was in jail with Janis Fortenberry and Linda Deal for the offense of car theft where they remained "a couple of hours" before they were released on bond. From the bondsman's office they were taken to Odom's law office "late in the evening." There Angelia testified she saw the appellant. Later Campbell came in with some money in a briefcase but she did not remember "what all happened exactly" and she thought the appellant was in the office at the time but she was "not for sure." Later she stated that when she, Campbell, Odom and the appellant were together in the office "we was talking about where they got the money and stuff * * * when David come in he said he had pulled a job at J. C.'s and had the money and stuff, and then I don't remember what all happened it's been such a long time back." It was not shown that the other alleged principal Leslie was ever present at Odom's office.[1]

Angelia Campbell did not remember taking any of the money for taxi fare home or any of the other details. Her testimony was a far cry from that described in Odom v. State, supra. She recalled that Odom

came in the office and then went out. She did not recall what, if anything, he said. She did not remember returning to Odom's office. She testified that later Campbell told her he and Leslie had committed the robbery, but she did not remember whether he had told her where he had gotten the guns used or about any arrangements made with the appellant or Odom. She related that the appellant told her "that if she needed any money to let him know, but that's all I really remember about the money * * *." The date of such statement attributed to the appellant was never established.

Later she was permitted to testify, over objection, that Campbell told her that when he and the appellant were arrested (on May 25, 1966) they were discussing the money taken in the robbery.

Houston Police Captain Colley testified he and Officer Bankston arrested the appellant and David Lee Campbell in a public cafeteria about 1:30 p. m. on May 25, 1966. He stated he acted under the authority of a Louisiana fugitive warrant in arresting Campbell and that appellant's arrest in connection with the alleged robbery was warrantless. He related that at the time the appellant had a pen in his hand and there was recovered from a table where the two arrestees were seated a paper napkin which bore the following notations:

$$
\begin{array}{r}
\text{``4400}\\
\underline{600 \text{ me } 600}\\
3800\\
\underline{600 \text{ bonds}}\\
3200\\
\underline{400}\\
2800\\
\underline{100}\\
2700.00\\
\underline{700}\\
2000.00\text{''}
\end{array}
$$

Angelia Campbell also testified that "several days" after the encounter in

1. The State was later to urge in jury argument that Leslie's absence meant he had already received his share of the money taken in the robbery.

Odom's office (the exact date never being established) the appellant and another man came to her house attempting to get her to sign an affidavit or affidavits stating that the appellant had no connection with the robbery. She refused and the appellant was then arrested at her home by the police. She thought this occurred after her appearance before the grand jury but she was not sure. When she was unable to positively identify the affidavit forms, their offer into evidence by the State was withdrawn.

Houston Police Officer Hadley testified that in the "early part of June, 1966" he had gone to San Francisco and taken custody of David Lee Campbell from the California police and that Campbell had in his possession money taken from a robbery at a Houston K–Mart not shown to have been connected with the appellant. Hadley then testified, over vigorous objection, as to an oral statement made by Campbell as well as a written statement (dated June 16, 1966) while he was under arrest and out of the appellant's presence confessing his guilt and implicating the appellant. Hadley related that Campbell told him the guns which had been taken from Campbell's possession were the guns used in the alleged robbery and that they had been obtained in

an earlier burglary and had been given to him by the appellant Chapman; [2] that the money taken in the robbery had been given to the appellant and Odom; that when he and the appellant had been arrested together the appellant had in his possession $1,-000.00 from the robbery [3] and had written on a paper napkin the manner in which the money was to be split.

Hadley also testified that the appellant had been arrested at Angelia Campbell's home in possession of affidavits which he had attempted to get her to sign.

In determining the question of the sufficiency of the evidence presented, we must bear in mind the nature of the offense with which appellant is charged under Article 70, Vernon's Ann.P.C.[4]

"The courts have characterized an accomplice as a person who has completed his offense before the crime is actually committed, and whose liability attaches after its commission, by virtue of his previous acts in bringing it about through the agency of or in connection with third parties.

"To make one an accomplice, he must be connected in some way with the crime charged and under investigation; it is

2. Hadley acknowledged on cross-examination that he had testified in Odom's trial Campbell had told him that the guns had come out of a burglary which Campbell had committed.

3. The evidence obtained as a result of a search of appellant's person incidental to his arrest on May 25, 1966, was not offered by the State. Out of the jury's presence the prosecuting attorney stated that an envelope containing $1,000 had been on the appellant's person at the time but he was not offering the same. He pointed out that in the Odom trial or appellant's earlier trial a queston concerning the suppression of evidence had been raised since "the State had in its possession information from the federal authorities a goodly portion of the greenbacks found in the envelope on Charles Chapman some weeks before then had been shipped by the Federal Reserve Bank to First City National Bank in

Houston, Texas." In her testimony, the robbery victim revealed she and her husband dealt with other named banks. No further clarification of the matter appears in this particular record.

4. Article 70, supra, provides as follows:
"An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense; or
"Who agrees with the principal offender to aid him in committing the offense, though he may not have given such aid; or,
"Who promises any reward, favor or other inducement, or threatens any injury in order to procure the commission of the offense; or,
"Who prepares arms or aid of any kind, prior to the commission of an offense, for the purpose of assisting the principal in the execution of the same."

not sufficient that he may have been allied or connected with the principal in some prior transaction that was a violation of the commission of the offense, and he must not have been present when it was committed, or then have been doing anything in furtherance of the common purpose and design.

"The mere fact that a person knows that a crime is being committed or is about to be committed and conceals or fails to disclose that fact, tacitly acquiesces in its commission, or uses words that amount to a permission to commit it does not make him an accomplice. To constitute a person an accomplice he must have done those things denounced by the statute in bringing about a subsequent offense. That is to say, knowing of the principal's unlawful purpose, the alleged accomplice must have advised, commanded, or encouraged the principal to commit the offense, or agreed to aid him, or have aided him in its commission, as provided by the statute. It is not necessary, however, that he and the principal should have entered into an agreement to commit the offense, if before the act was done he advised, commanded, or encouraged the principal to commit it." 16 Tex.Jur.2d, Criminal Law, Sec. 70, pp. 190–192.

We turn now to the sufficiency of the evidence, noting that the trial court charged the jury that Angelia Campbell and David Lee Campbell were accomplice witnesses as a matter of law and instructed them on the law relating to accomplice witnesses. See Article 38.14, V.A.C.C.P. Since David Campbell did not testify, the charge apparently had reference to testimony which attributed certain statements to him. The State has repeatedly contended that Campbell was a co-conspirator, and it is observed that since "a co-conspirator is an accomplice, a conviction cannot be sustained on the uncorroborated testimony of a co-conspirator." 12 Tex.Jur.2d, Conspiracy, Sec. 10, p. 333. And it is a fundamental principle that the testimony of one accomplice witness cannot corroborate another accomplice witness' testimony. 24 Tex.Jur.2d, Evidence, Sec. 695, p. 331.

Assuming, without deciding, that the testimony of Angelia Campbell and the statements attributed to David Lee Campbell each separately established the appellant's guilt as an accomplice to the crime of robbery alleged, we apply the test discussed in Edwards v. State, Tex.Cr.App., 427 S.W.2d 629, and eliminate from consideration their testimony which the court instructed the jury was that of accomplice witnesses and which could not be used to corroborate each other.

We must then determine if there is other evidence independent of the testimony of these two "tending to connect" the appellant "with the offense committed," keeping in mind that corroboration is not sufficient if it merely shows the commission of an offense. See Article 38.14, supra.

We cannot agree that the corroborating evidence is sufficient. There was no such evidence reflecting that prior to the alleged robbery the appellant "advised, commanded and encouraged" the two principals to commit the offense of robbery.

It is true that a paper napkin was found on the table at the time the appellant and David Campbell were arrested together two days after the robbery. No one saw the appellant write on such napkin nor was his handwriting identified, even though he had a pen in his hand at the time of his arrest. The notations on the napkin were not shown to bear any relation to the robbery involved or the amount of money taken in the robbery. It was also shown that the appellant was arrested at Angelia Campbell's house in possession of affidavit forms which supposedly he had attempted to get her to sign. He had, however, been previously arrested in connection with the robbery and then released for lack of evidence. We cannot see how an attempt to get someone to sign an affidavit as to his innocence tends to

connect him with the offense of being an accomplice to the crime. See Article 70, supra.

The evidence being insufficient to corroborate that of the accomplice "witnesses," reversal must follow.

There is another ground which calls for reversal and which we discuss in the event of another trial. That is the question of the admissibility of the statements made by David Campbell after his arrest and in the absence of the appellant to Officer Hadley.

The general rule of law with regard to confessions made by one party after the deed has been committed and in the absence of the accused has long been that such confessions of guilt can only be used against the person giving the confession and is inadmissible against the others under the hearsay rule. See McCormick & Ray, Texas Law of Evidence, 2d ed., Sec. 1219, p. 96; 24 Tex.Jur.2d, Evidence, Sec. 667, p. 272.

"An exception·to such general rule appears to obtain where an accomplice is being tried separately from his principal. This exception is apparently bottomed on the fact that the State has the burden of proving the guilt of the principal in such case and, therefore, any testimony which would be admissible to show the guilt of the principal if he were on trial is admissible on the trial of the accomplice for the purpose of showing the guilt of the principal. See McCormick & Ray, Texas Law of Evidence, 2nd Ed., Sec. 1219, p. 97; 2 Branch's Anno.P.C. 2nd Ed., Sec. 754, p. 52; 24 Tex.Jur.2d, Evidence, Sec. 669, p. 273." Schepps v. State, Tex.Cr.App., 432 S.W.2d 926, 940.

■■ Such exception is applicable only where the person whose confession is sought to be used is named in the indictment as a principal, Sapp v. State, 87 Tex. Cr.R. 606, 223 S.W. 459, and it does not come into play where the principal is a competent witness and testifies acknowledging his guilt. Browney v. State, 128 Tex.Cr.R. 81, 79 S.W.2d 311. Where the confession is admitted under the exception it should be strictly limited in the court's charge to the purpose for which it was admitted.

Usually the difficulty arises when the principal's confession of guilt implicates the accomplice on trial. In Schepps v. State, supra, on the State's motion for rehearing, two judges held that the introduction of such a confession implicating the accused violated his constitutional right of confrontation under the circumstances described. A third judge agreed with the reversal because of the court's refusal to excise the hearsay portion of the principals' confessions implicating the accused, the limiting charge being insufficient to remove the injury caused.

■ In the instant case we need not determine whether the Schepps decision would have prohibited the introduction of the oral and written statements of Campbell. This is so because it is well established that the principal's confession may not be introduced in the trial of an accomplice unless the same would have been admissible against the principal if he were on trial. See Hinson v. State, 51 Tex.Cr.R. 102, 100 S.W. 939. Both the oral and written statements were made while the principal Campbell was under arrest without any warnings being given him as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, or Article 38.22, V.A.C.C.P. See Lee v. State, Tex.Cr.App., 428 S.W.2d 328.

Therefore, it is clear that the statements were not admissible under the theory that they were confessions of the principal and could be introduced to show his guilt, an essential element on the trial of the accomplice to the crime.

Nevertheless, the State argues that the statements were admissible against the appellant as the acts and declarations of a co-conspirator during the furtherance of the conspiracy even though made outside the presence of the appellant.

**662**

There are cogent reasons why this theory is not valid. For the statements of Campbell to be admissible under this theory it is essential that there by proof of the existence of a conspiracy. The statements of Campbell as related to Officer Hadley were hearsay and the hearsay statements were insufficient to establish a conspiracy themselves. See White v. State, Tex.Cr.App., 451 S.W.2d 497, 503. For the statements to have been admissible there must be evidence outside and independent of such statements which tend to show an acting together of the parties. Clark v. State, 158 Tex.Cr.R. 231, 254 S.W.2d 527. Apart from the testimony of the co-conspirator there must be some evidence of participation or interest of the accused in the commission of the crime in order to establish a conspiracy or an acting together. The participation by an accused in a crime cannot be established by the unsupported declarations of a third person in the absence of the accused, even though such third person was allegedly a co-conspirator. Clark v. State, supra. And, of course, one co-conspirator may not corroborate another co-conspirator; so the proof of the conspiracy must come from sources independent of the testimony of the co-conspirators. As we read this record we find no evidence outside the testimony of the co-conspirators Campbell and his wife Angelia which would tend to show an acting together or a conspiracy so as to authorize the acts and declarations of a co-conspirator in the absence of the appellant.

Even if it could be concluded that the proof was sufficient to show a conspiracy, there exists another reason why the statements are not admissible. It is well established that acts and declarations of co-conspirators in the absence of the accused after the termination of the conspiracy are not admissible against the accused. See 12 Tex.Jur.2d, Conspiracy, Sec. 9, p. 333; 2 Branch's Ann.P.C., 2d, Sec. 723, p. 18.

It is clear that the statements were made almost a month after the commission of the offense and after both parties had been arrested and the purported conspiracy had long since terminated. It would be difficult to imagine that the statements made by Campbell to the police were made pending the conspiracy and in the furtherance of the common design, if any.

The State urges this court to consider that "even after the conspiracy has ended, as an exception to the general rule, it may be shown that a co-conspirator, or co-defendant, was found in possession of the fruits of the crime or the weapon or instrument with which it was committed." 2 Branch's Ann.P.C., 2d, Sec. 723. If the officer's testimony had been limited to the fact of Campbell's possession of the weapons such evidence would clearly have been admissible. We do not view the exception urged by the State as also authorizing, after the termination of the conspiracy, hearsay statements by a co-conspirator in the absence of the accused which are in the form of narratives of past events, descriptions or subsequent confessions even if the fact of a conspiracy has been sufficiently established by other evidence.

As earlier noted, the error in admitting into evidence over objection the oral and written statements of David Campbell implicating the appellant calls for reversal.

For all the reasons stated, the judgment is reversed and cause remanded.