Affirmed and Memorandum Opinion filed January 24, 2006









Affirmed
and Memorandum Opinion filed January 24, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00381-CR

____________

 

JEROME DEVON
WILSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 925,625

 



 

M E M O R A N D U M   O P I N I O N

Challenging his conviction for capital
murder, appellant Jerome Devon Wilson asserts in six issues that the trial
court erred in failing to instruct the jury on the law of accomplice witnesses
and that the evidence is legally and factually insufficient to support his
conviction because the accomplice testimony offered by the State was not
credible or sufficiently corroborated. 
We affirm. 

I.  Factual and Procedural Background

On August 22, 2002, Leslie ABo@ Wilson[1]
called his friend Terry Thomas to see if Thomas was available to
accompany him to a car stereo store where Wilson=s Impala
automobile was located.  A victim of
prior robberies, Wilson kept a nine-millimeter Ruger handgun in the passenger=s back-seat pocket
of his vehicle.  En route to the stereo
store, Wilson, at Thomas=s request, agreed to take Thomas to a
location where Thomas could sell some marijuana.  Wilson knew Thomas had a grocery bag full of
marijuana, and he proceeded to drive Thomas to the Red Carpet Inn on Highway 59
in Harris County.  On the way to the
hotel, Thomas made a call using Wilson=s cell phone.  Upon arriving at the hotel, Wilson drove
around the parking lot looking for room number 109.  They saw a man standing in the doorway of
that room, but Wilson continued to drive around the block.  Wilson then asked Thomas to get into the back
seat to force the man, later identified as appellant, into the front seat.  The men then pulled the car in front of room
number 109, and Wilson honked the horn. 








Appellant walked out of the room and up to
Thomas=s car door. Thomas
told appellant to get in the front seat and shut the door.  Appellant complied. Appellant and Thomas
conversed and Thomas handed appellant a bag of marijuana.  Appellant smelled the marijuana, asked for a
price, and tried to negotiate a lower one.  
Ultimately, Thomas and appellant agreed on a price; appellant then
stated that the Amoney@ was back in his
room.  Appellant got out of the car and
went back into his hotel room.  When
appellant came back out of the room and walked toward the car, appellant
reached into his pocket with his right hand and opened the front passenger
door.  Leaning inside, appellant then
pulled a pistol out of his pocket, put it up to Wilson=s head, and said, ACheck yourself,
fool.@  Wilson testified that he closed his eyes,
balled up his legs and arms, and started to scream.  A few seconds later, he heard a single
gunshot, opened his eyes, and noticed that his friend Thomas had been
shot.  Wilson further testified that
blood squirted out of Thomas=s neck and
shoulder area onto the ceiling of the car and all over the interior of the
vehicle.  Appellant grabbed the bag of
marijuana and went back into the hotel room. 
Wilson testified that Thomas said, AI=m going to
remember that M.F.  I remember that
M.F.  I know that face, when I see it
again.  He shot me, he shot me.  Get me to a hospital, quick, quick, quick.@  Frightened and nervous, Wilson drove the car
out of the hotel parking lot, called 911, and headed to Memorial Southwest
Hospital, reaching that location in approximately ten minutes.  When Wilson arrived at the hospital, he was
afraid that someone would find his handgun, so he quickly hid it in the trunk
of his car, and ran inside the hospital, screaming for help.  Medical personnel arrived with a
stretcher.  Thomas was moaning.  He had sustained one gunshot to his lower
right neck.  The bullet had traveled
through his right collarbone, torn through the subclavian artery and vein, and
lodged inside one of his ribs.  Thomas
later died.

At the hospital, Wilson talked to the
police officers, but was not completely forthcoming for fear of being blamed
for the shooting.  He initially told the
officers that he and Thomas were at a gas station when a man came up and shot
Thomas.   When the officers later drove
Wilson to that gas station, they discovered that no crime had occurred
there.  After Thomas=s death, Wilson
decided to tell the police the truth about the shooting.  Wilson gave a written statement and assisted
the police in creating a composite sketch of appellant.  The police recovered a fired shell casing
from the front seat of Wilson=s car.  Wilson=s gun was also
found, but testing eliminated it as the murder weapon. 








The police went to the hotel to locate
potential witnesses and to look at the registration log for room number
109.  This log showed that the room had
been reserved by a man named Rozzell Barber. 
Soon thereafter, in an unrelated incident, the police pulled Barber over
for a traffic offense.   Appellant was a
passenger in the vehicle.  As Barber
opened the glove compartment to look for his insurance card, the officers saw a
handgun underneath his seat. The officers cleared the vehicle, seized the gun,
and arrested Barber.  At this time, the
officers lacked enough information to detain appellant, so they took his
contact information and released him. 
Later, however, after viewing Wilson=s composite
sketch, the police realized that the passenger in Barber=s car was the same
person displayed in the sketch.  In
addition, testing confirmed that the gun found in Barber=s car was the
murder weapon.  For further confirmation,
the officers showed Wilson a photospread which included a photograph of
appellant.  Wilson immediately identified
appellant as the individual who shot and killed Thomas.  

Appellant was arrested in January 2003, in
Indianapolis, Indiana.  After being
charged with the felony offense of capital murder, appellant pleaded not
guilty.  A jury found appellant guilty of
the charged offense, and the trial court assessed punishment at confinement for
life.  Challenging his conviction,
appellant asserts six issues on appeal: 

(1)     The trial court committed reversible error
in failing to instruct the jury that Wilson was an accomplice witness to the
capital matter as a matter of law, Wilson was a party under the law of
conspiracy. 

(2)     The trial court committed reversible error
in failing to instruct the jury to consider whether Wilson was an accomplice
witness to the alleged capital murder as a matter of fact, where Wilson was
party under the law of conspiracy.

     (3)B(4)    The evidence is
legally and factually insufficient to support the conviction of capital murder
because the State failed to corroborate Wilson=s testimony.

     (5)B(6)    The evidence is
legally and factually insufficient to support his conviction of capital murder
because Wilson=s testimony was not credible.[2]

 








A.      Did the trial court err in failing to give
the jury an instruction to consider whether Leslie Wilson was an accomplice
witness to the capital murder.  

In his first two issues, appellant argues
that the trial court erred in failing to instruct the jury that Wilson was an
accomplice witness (as a matter of law and as a matter of fact) to the capital
murder.  Appellant contends that Wilson=s testimony at
trial was sufficient to establish  his
knowledge of the offense being committed and the possibility of Thomas=s death.  Essentially, appellant argues that Wilson was
an accomplice and a co-conspirator to the crimes committed.  We disagree. 

An Aaccomplice witness@  is one who participates with another before,
during, or after the crime.  Paredes
v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  One is not an accomplice because he knows of
the crime but fails to report it or even conceals it.  Id. 
The test is whether a prosecution will lie against the witness under the
accused=s indictment.  Id. 
An accomplice=s participation must involve an
affirmative act that promotes the commission of the charged offense.  Paredes, 129 S.W.3d at 536 (emphasis
added).  Even evidence that a witness
helped to conceal a crime after it is completed is insufficient to raise the
issue of accomplice status.  Medina v.
State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999); see also Paredes,
129 S.W.3d at 537B38 (holding witnesses who helped clean out
cars used to transport capital murder victims were not accomplices).

If Athere exists no
doubt or the evidence clearly shows that a witness is an accomplice witness as
a matter of law [then] >the court is under a duty to so instruct
the jury.=@  DeBlanc v. State, 799
S.W.2d 701, 708 (Tex. Crim. App. 1990). 
Others are accomplices as a matter of fact.  Id. 
If the evidence presented by the parties is conflicting, and it is
not clear whether the witness is an accomplice, the jury initially must
determine whether the witness is an accomplice as a matter of fact.  Id.  If the evidence is conflicting, it is proper
to leave the question of whether an inculpatory witness is an accomplice
witness as a matter of fact to the jury under instructions defining the term
accomplice.  Id.  However, it is only when the evidence clearly
shows that the witness is an accomplice as a matter of law that the trial court
must so instruct the jury.  Arney v.
State, 580 S.W.2d 836, 839 (Tex. Crim. App. 1979).








We consider each case on its own facts and
circumstances.  Reed v. State, 744
S.W.2d 112, 126 (Tex. Crim. App. 1988). 
A co‑conspirator is an accomplice.  Chapman v. State, 470 S.W.2d 656,
660 (Tex. Crim. App. 1971).  Appellant
relies on section 7.02 of the Texas Penal Code for his argument that Wilson is
an accomplice.  This section is
inapplicable, however, because there is no evidence that Wilson conspired with
appellant to commit any crime.  All of
the acts in this case were committed by appellant alone.  Under Section 7.02(a), a person is criminally
responsible for a capital‑murder offense committed by another person=s conduct, if 

(1) acting with the kind of
culpability required for the offense, he causes or aids an innocent or
nonresponsible person to engage in conduct prohibited by the definition of the
offense; [or] 

(2) acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense. 

 

Tex. Pen. Code
Ann. ' 7.02(a) (Vernon
2003).  Thus, a person could be found
guilty of capital murder under Section 7.02(a) if he had the intent to kill
someone during the commission of the felony (in this case, delivery of
marijuana), and (1) he caused or aided a person to shoot and kill the victim,
or (2) he solicited, encouraged, directed, or aided in the commission of the
capital murder.  Id.  Furthermore, section 7.02(b) provides in
pertinent part: 

If, in the attempt to carry out a
conspiracy to commit one felony, another felony is committed by one of the conspirators,
all conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.

 

Tex. Pen. Code
Ann. ' 7.02(b) (Vernon
Supp. 2005).  A person commits the
offense of delivery of marijuana if he intentionally or knowingly transfers or
offers to sell marijuana to another person. 
Tex. Health & Safety Code
Ann. ' ' 481.002 (8) and
481.120 (Vernon 2004).  








Despite appellant=s contentions,
Wilson=s testimony does
not establish that he had the intent to commit a felony nor did he conspire
with appellant to commit a felony. 
Wilson never transferred marijuana to another person nor did he offer to
sell the marijuana.  Although Wilson may
have suspected that foul play might occur when they arrived at the hotel, there
is no evidence suggesting that he assisted in the preparation for or planning
of the narcotics transaction or any other crime.  See Paredes, 129 S.W.3d at 537.  Wilson and Thomas were good friends at the
time of Thomas=s death. 
Wilson testified that he sometimes carried a weapon in his car because
he had been robbed before and wanted it for protection.  This evidence is not enough to show intent to
commit a felony or murder.  The record
contains no evidence to support the conclusion that Wilson intended to murder
Thomas while in the commission of a felony,or even that Wilson was involved in
a felony. 








Wilson was not an
accomplice.  There is no evidence that
Wilson was involved, in any way, with the planning of or preparation for the
murder.  Because the evidence establishes
that he was not an accomplice, and there is no evidence to the contrary, the trial
court did not err in denying appellant=s request to
instruct the jury on the law of accomplice witnesses as a matter of law or as a
matter of fact.  See Lee v. State,
2004 WL 1206019, at *3 (Tex. App.CHouston [14th
Dist.] June 03, 2004, no pet.) (not designated for publication) (holding that
even though [Garland] sold the murder weapon to the person who gave the gun to
[appellant] who committed the crime, there was no evidence that [Garland] was
aware of the intended use of the gun); Simon v. State, 2003 WL 22332285,
at *2B3 (Tex. App.CDallas October 14,
2003, no pet.) (stating that accomplice witness jury instruction was not
warranted during aggravated robbery trial, where evidence showed only that the
witness at issue was present at the location of the robbery, not that he
actually assisted, encouraged, or participated in the robbery or even knew a
robbery would occur, as required to be an accomplice) (emphasis added); Johnson
v. State, 651 S.W.2d 303, 317 (Tex. App.CSan Antonio 1983,
no pet.) (finding even though witness shared in heroin purchased from stolen
money, where witness did not know what was going to be robbed, did not pay
attention to further conversations between defendant and others who
participated in robbery, witness did not share in proceeds of robbery, and
crime for which defendant was being prosecuted was capital murder, for which
witness could not be indicted and punished, trial court did not err in refusing
to charge witness was accomplice as matter of law or to submit that issue to
jury).  Accordingly, we overrule
appellant=s first two issues. 

B.      Is the evidence legally and factually
insufficient to support appellant=s conviction for capital murder?

 

In issues three
through six, appellant contends that the evidence is legally and factually
insufficient to support his conviction for capital murder.  Appellant argues that Wilson=s testimony was
not credible nor sufficiently corroborated and therefore should have been
excluded.  Appellant further argues that
without Wilson=s testimony, the remaining evidence is not
legally or factually sufficient to support his conviction.  Appellant does not contest that, with Wilson=s testimony, the
evidence is legally and factually sufficient. 
Because Wilson was not an accomplice, corroboration of his testimony was
unnecessary.

In evaluating a
legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State=s evidence or
believe that appellants= evidence outweighs the State=s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex.
Crim. App. 1984).  The verdict may not be
overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt.  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991). 
The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt,
we must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).








In contrast, when
evaluating a challenge to the factual sufficiency of the evidence, we view all
the evidence in a neutral light and inquire whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  A reviewing
court may find the evidence factually insufficient in two ways.  Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85.  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id.
at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the weight and
credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  In conducting a
factual-sufficiency review, we must discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

A person commits
the offense of murder if he intentionally or knowingly causes the death of an
individual.  Tex. Pen. Code Ann. ' 19.02(b) (Vernon
Supp. 2005).  A person commits capital
murder when such person commits murder in course of committing a felony.  See id. at ' 19.03.  A 
person commits the offense of delivery of marijuana if he intentionally
or knowingly transfers or offers to sell marijuana to another person.  Tex.
Health & Safety Code Ann. ' ' 481.002 (8) and
481.120 (Vernon 2004).  

Article 38.14 of
the Code of Criminal Procedure provides that a conviction cannot stand on
accomplice testimony unless it is corroborated by other evidence that tends to
connect the accused with the offense.  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005); Colella v. State, 915 S.W.2d 834, 838 (Tex. Crim.
App.1995); see also St. Julian v. State, 132 S.W.3d 512, 516 (Tex. App.CHouston [1st
Dist.] 2004, pet. ref=d). 
Corroborating evidence is insufficient if it merely shows the commission
of an offense.  Tex. Code Crim. Proc. Ann. art. 38.14; Cathey
v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). 








In assessing the
sufficiency of corroborative evidence, we eliminate the testimony of the
accomplice witness from consideration and examine the testimony of the other
witnesses to ascertain whether the non‑accomplice evidence tends to
connect the accused with the commission of the offense.  St. Julian, 132 S.W.3d at
516.  The non‑accomplice evidence
need not by itself establish the accused=s guilt beyond a
reasonable doubt.  Id.  Rather, some evidence must exist that tends
to connect the accused to the commission of the offense.  Id.

In this case, it
is not necessary for us to evaluate the non-accomplice evidence alone because
we have concluded as a matter of law and as a matter of fact that Wilson was
not an accomplice.  Furthermore, we find
no merit in appellant=s contentions that because Wilson=s testimony
purportedly was not credible, the evidence is legally and factually
insufficient.  Whether a witness
testifying at trial was credible is not an issue for us the appellate
court.  When reviewing the evidence, our
role is not to become a thirteenth juror. 
This court may not re‑evaluate the weight and credibility of the
record evidence and thereby substitute our judgment for that of the fact‑finder.  Wilson v. State, 863 S.W.2d 59, 65
(Tex. Crim. App. 1993).  








The evidence of
appellant=s guilt was overwhelming.  Wilson was an eyewitness to all the events in
question.  Wilson observed appellant with
the gun before and after the shooting and he saw appellant take the bag of
marijuana from Thomas.  Wilson
specifically recounted the events as they took place that day and positively
identified appellant as gunman.  The
testimony of a single eyewitness, such as Wilson, is sufficient to support a
felony conviction.  See Bowden v.
State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (holding that
testimony of a single eyewitness can be factually sufficient to support a
felony conviction).  In addition, the
murder weapon was recovered from the vehicle in which appellant was riding when
the police made the traffic stop. 
Appellant was riding in the vehicle with Barber, the man who was linked
to room number 109.  Finally,  proof that appellant was at or near the crime
scene at or about the time the crime occurred, coupled with other suspicious
circumstances, even seemingly insignificant ones, may well be enough to connect
the defendant to the offense.  Dowhitt
v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); Cox v. State,
830 S.W.2d 609, 611 (Tex. Crim. App. 1992). 
We conclude that the evidence presented in this case is legally and
factually sufficient to support appellant=s conviction of
capital murder.  See Conner v.
State, 67 S.W.3d 192, 198 (Tex. Crim. App. 2001) (holding that
evidence that defendant was seen pointing a gun at murder victim, that money
was found scattered around victim=s body, and that
blood was found in cash register was sufficient to support finding that
defendant shot victim in course of robbing or attempting to rob her); Maldonado
v. State, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999) (holding that
specific intent to rob may be inferred from circumstantial evidence and from defendant=s conduct); Ross
v. State, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992) (stating that a
jury may infer the intent to kill from the use of a deadly weapon unless it
would not be reasonable to infer that death or serious bodily injury could
result from the use of the weapon); Huffman v. State, 746 S.W.2d 212,
215 (Tex. Crim. App. 1988) (en banc) (holding that the evidence was legally
sufficient to support the inference that [Huffman] intentionally murdered his
victim during the course of or while attempting to commit robbery).   Accordingly, we overrule appellant=s issues three
through six. 

Having overruled
all of appellant=s issues, we affirm the judgment of the
trial court.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment rendered and Memorandum Opinion filed January 24,
2006.

Panel consists of Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Leslie ABo@ Wilson has no relation to appellant, Jerome Devon
Wilson.  Throughout this opinion,
references to AWilson@ are references to Leslie ABo@ Wilson.  Jerome
Devon Wilson is referred to simply as Aappellant.@





[2]  Because many
of the facts and legal arguments overlap in appellant=s issues, we address issues one and two together, and
issues three through six together.