Opinion issued December 17, 2009




 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00534-CR

____________


HOWARD DALE BELLAMY, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1037846







MEMORANDUM OPINION

 A jury convicted appellant, Howard Dale Bellamy, of capital murder and the
court assessed punishment at life in prison. See Tex. Penal Code Ann. § 19.03
(Vernon 2003). Appellant contends that the evidence adduced at trial is legally and
factually insufficient to support his conviction for capital murder. Further, appellant
contends that the trial court erred by failing to instruct the jury that Domonique
Alston was an accomplice as a matter of law, and that Geoffrey Harris was an
accomplice as a matter of law and as a matter of fact. We affirm.

Background


 Around lunchtime on August 11, 2005, appellant and his girlfriend,
Domonique Alston, went to Joseph Fiorenza Park in southwest Houston to take their
two pitbull puppies on a walk. Appellant noticed complainant, Akhil Chopra, enter
the park alone. After Chopra walked by, appellant asked Alston to take the puppies
and leave the park. Confused, Alston questioned why appellant wanted her to leave,
but appellant refused to explain. Appellant "snap[ped]" and again told Alston to get
in the car and take the dogs. Alston did what she was told and started to drive north
on Eldridge Road.

 Medical testimony revealed that Chopra died while lying on his back and was
subsequently rolled over on his side to remove the wallet from his back pocket. 
Based on this and other evidence presented at trial, the prosecution theorized that
once Alston left the park, appellant walked up to Chopra with a .38 caliber revolver
and demanded he relinquish his wallet. Because of contusions and abrasions to
Chopra's face and hands that occurred just prior to his death, the prosecution
suggested that Chopra refused to give appellant his wallet, and a struggle ensued
during which appellant pistol-whipped and shot Chopra in the temple at point-blank
range. 

 After initially driving north on Eldridge Road for a couple of miles, Alston
turned around, intending to return to the park because she was "curious" about what
was going on. Alston found appellant walking away from the park at the intersection
before the entrance to the park's parking lot. Alston stopped and let appellant into
the car. Alston testified that, after appellant got into the car, he told her that he "had
the wallet from the man in the park." Alston observed appellant holding a brown
leather wallet. Although Alston testified that she did not see appellant with his gun
on the day in question, she also testified that appellant wore clothing that was about
two sizes too large and he could have kept the gun tucked in his waistband.

 Appellant directed Alston to drive him to the apartment of his friend, Geoffrey
Harris. Once at the apartment, appellant told Alston to stay in the car while he went
inside. Harris and his girlfriend, Angel Coleman, were inside the apartment with their
newborn child. Both Harris and Angel saw appellant enter the apartment with a gun
and set it on a table. Harris took the gun and placed it under the sofa cushion because
he did not want the weapon around his child. Angel observed what appeared to be
blood on appellant's fingertips and one of his shoes. After Alston had been waiting
in the car for a few minutes, Harris emerged and told Alston to come inside the
apartment. Both Angel and Alston overheard appellant telling Harris how he had just
robbed and shot a man in the park. Appellant and Harris divided the contents of
Chopra's wallet, with Harris taking a debit card belonging to Chopra. Appellant later
admitted to investigators that he gave the debit card to Harris.

 In the early morning hours of August 16, 2005, Houston Police Department
("HPD") Officer Curtis Scales apprehended Harris attempting to use Chopra's debit
card. While in custody, Harris initially told officers that he received the debit card
from a Corey Gibson but, later, told officers that appellant was the true perpetrator
of the offense. At trial, Harris testified that he initially lied to officers in an effort to
protect appellant. Harris testified that he was a member of the same gang as
appellant, and there was a "code about snitching." 

 Based on information from Harris, Alston, and Angel Coleman, an arrest
warrant was issued for appellant. Alston informed police that appellant was staying
at his mother's apartment, and Alston spoke with appellant on a land line at the
apartment just minutes before police officers arrived. Believing that the police
officers were coming to arrest him, appellant fled when he noticed what he believed
to be unmarked police cars pull into the apartment complex. Appellant testified he
spent that night "just roaming about on the streets."

 At appellant's mother's apartment, HPD Officer Christopher Duncan recovered
a backpack containing several live and spent .38 caliber cartridges. The backpack
also contained several McDonald's paycheck statements in appellant's name. In
addition to the backpack, Officer Duncan found a loaded .38 caliber revolver with
a bullet chambered and a blue bandanna wrapped around the grip. The bullet
recovered from Chopra's body during the autopsy came from a firearm of the same
class as the pistol recovered from the apartment. The blue bandanna wrapped around
the pistol contained DNA from at least three different individuals. Appellant could
not be excluded as a possible contributor of the DNA.

 Appellant was ultimately apprehended at the apartment of the mother of his
child, Kathy Whitson. Despite Whitson's lying to police officers that appellant was
not at the apartment, appellant was found hiding underneath a bed in a rear bedroom
of the apartment. Once apprehended, appellant admitted to HPD officers that the
firearm found at his mother's apartment belonged to him and that he had intended to
wipe the revolver clean of fingerprints before getting rid of it.

 At trial, appellant claimed Harris was the true perpetrator of the offense and
that he received the revolver from Harris after Harris killed Chopra. Appellant also
claimed that Harris and Alston were conspiring together to frame him.

 Appellant testified that, on the day of the offense, he and Alston were attending
orientation at a temporary employment agency. After the orientation, appellant stated
that he went to his grandmother's house around lunchtime and then spent the rest of
the day at Alston's apartment. In support of his alibi, appellant offered the testimony
of his cousin, Alton Coleman. Alton, who lived with his grandmother, testified he
heard appellant come into his room around noon on August 11, 2005. Alton testified
that he remembered that day specifically because his little brother had gone to school
to purchase books. However, according to a school district calendar, the school was
not open to students on August 11, 2005.

 Appellant also offered the testimony of William Horn and Craig Vincent. Horn
testified that Harris called him around noon on August 11, 2005 and asked if he could
come over. Horn said that he heard sirens in the background of the call and that
Harris seemed "kind of nervous." Horn testified that Harris didn't say where he was
but then, said that Harris mentioned he was at or by a park. Horn refused to let Harris
come over but said he saw Harris later that day at Harris's apartment, where they
"chilled" for about 20 minutes. Horn went over to another apartment and saw Harris
again later that night. Horn also testified that he met with Harris a few days later at
a motel room Harris had rented. Horn testified that, while at the motel, he saw Harris
put a pistol wrapped in a blue bandanna in Corey Gibson's car trunk, and then, he saw
Harris give the pistol to appellant. On cross-examination, Horn stated that when he
spoke with Officer Scales and the prosecutor a week before trial, he failed to tell them
about the phone call from Harris asking to come over on the day of the offense, his
meeting Harris at the motel room, or his seeing the pistol. When he spoke with the
police, he told them that all he knew was that Harris had the credit card of a dead man
and was buying people gas.

 Vincent testified that, on August 13, 2005, Harris called him saying he could
fill Vincent's truck with gas. At the gas station, Harris paid for Vincent's gas with
a credit card, and Vincent did not have to pay Harris anything in exchange. Harris
told Vincent that he had just "hit a lick," which Vincent understood to mean that he
robbed or killed someone. Vincent testified that he had seen Harris with the revolver
in question. Vincent was a member of the gang, the Crips, along with appellant,
Harris, and Horn. Vincent testified that there was a code among gang members that
"you look out for each other." Under cross-examination, Vincent testified he was
currently in jail and had several convictions, including theft, felony evading arrest
with a motor vehicle, and felony possession of a controlled substance. Vincent also
testified that he had met with a District Attorney Investigator a week prior to the trial. 
When he met with the investigator, he was very concerned about being recorded and
only talked after the investigator assured him he was not being recorded. When he
spoke with the investigator, he did not mention seeing Harris with the pistol.

 Appellant also presented Robert Benjamin as an expert on forensic DNA
analysis to testify regarding the DNA found on the bandanna. Benjamin testified that,
after his review of the DNA reports from the HPD, he concluded that Harris would
be just as likely to be a contributor of the DNA on the bandanna as appellant. 
However, the lab Benjamin works with is accredited only as a paternity lab, not as a
forensics lab. Benjamin had never tried to become accredited in forensics. Benjamin
also testified that the HPD would probably not send work to his lab because "for
evidence work, they would most definitely want to use an accredited lab." 

 The jury returned a guilty verdict of capital murder. The court then sentenced
appellant to life in prison.

Analysis

A. Sufficiency of the Evidence

 In his first two issues, appellant contends that the evidence is legally and
factually insufficient to support his conviction for capital murder.

 1. Standard of Review

 In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime's essential elements beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009). The standard is the same for both direct and circumstantial
evidence cases. Laster, 275 S.W.3d at 517-18. We do not resolve any conflict of
fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).

 In our factual-sufficiency review, we view all of the evidence in a neutral light. 
Laster, 275 S.W.3d at 518. We will set aside the verdict only if (1) the evidence is
so weak that the verdict is clearly wrong and manifestly unjust or (2) the proof of
guilt is against the great weight and preponderance of the evidence. Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see Laster, 275 S.W.3d at 518. Under the
first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006). Under the second prong of Johnson, we also cannot declare
that a conflict in the evidence justifies a new trial simply because we disagree with
the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Id. In our
factual-sufficiency review, we must also discuss the evidence that, according to
appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 The jury is the ultimate judge of credibility. Lancon v. State, 253 S.W.3d 699,
705 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon
2007), art. 38.04 (Vernon 1984). The fact-finder alone determines the weight to be
to given contradictory testimonial evidence because that determination depends on
the fact-finder's evaluation of credibility and demeanor. Lancon, 253 S.W.3d at 706.
The fact-finder may choose to believe all, some, or none of the testimony presented. 
Id. at 707.

 In our sufficiency review, direct and circumstantial evidence are treated as
equally probative in establishing guilt, and circumstantial evidence alone can be
sufficient. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). A
factfinder may draw an inference of guilt from the circumstances of flight. Id. at 780.

 2. Elements of Capital Murder

 To establish that appellant committed capital murder, the State had the burden
to prove beyond a reasonable doubt that appellant intentionally caused the death of
an individual in the course of committing or attempting to commit a robbery. See
Tex. Penal Code Ann. §19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp.
2009). A person commits a robbery if, in the course of committing theft and with
intent to obtain or maintain control of the property, he intentionally, knowingly, or
recklessly causes bodily injury to another, or intentionally or knowingly threatens or
places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. §
29.02(a) (Vernon 2003).

 3. Legal Sufficiency

 In his first issue, appellant contends that the evidence is legally insufficient to
support his conviction. Specifically, appellant argues that the evidence is so weak
against appellant and so strong against Harris that no rational trier of fact could have
found beyond a reasonable doubt that appellant committed the offense. Appellant
recites selected facts (in several instances misstating the record), while failing to
mention other evidence, and concludes the jury should have believed that Harris
committed the offense. In other words, appellant argues that we should accept his
assessment of the evidence and substitute it for that of the jury.

 Appellant's argument is misplaced. In our legal sufficiency review, we do not
resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this was the function of the trier of fact. Dewberry, 4 S.W.3d at 740. 

 Here, testimony was given by Alston placing appellant at the scene of the crime
at the time of the offense. Alston saw appellant with Chopra's wallet walking away
from the park where the offense occurred. Appellant told Alston that he got the
wallet from the man in the park. Harris, Alston, and Angel all testified that appellant
said he shot Chopra, took his wallet, and then divided the contents of the wallet with
Harris. Appellant admitted to investigators that he gave Chopra's Wells Fargo card
to Harris. A firearm matching the kind used to kill Chopra was found with
appellant's belongings at his mother's apartment. Appellant could not be excluded
as the contributor of DNA on the bandanna wrapped around the firearm. 

 Appellant testified that he fled from his mother's apartment when he saw police
officers arriving because he believed they were there to arrest him. He was finally
apprehended several days later hiding under a bed at the apartment belonging to the
mother of his child. The jury would be justified in considering the circumstances of
his flight and apprehension as a piece of incriminating circumstantial evidence. See
Clayton, 235 S.W.3d at 780.

 Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational jury could have found beyond a reasonable doubt that appellant
intentionally caused the death of an individual in the course of committing or
attempting to commit a robbery. See Tex. Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(2). Therefore, the evidence is legally sufficient. 

 We overrule appellant's first issue.

 4. Factual Sufficiency

 In his second point of error, appellant argues that the evidence is factually
insufficient to support his conviction. Specifically, appellant argues that the Court
should substitute its assessment of the credibility of the witnesses for that of the jury
and should find that the verdict is contrary to the overwhelming weight of the
evidence. In addition, appellant continues argue the theory of the case he presented
at trial.

 In his brief, appellant repeatedly misstates the record. First, he contradicts the
record when he argues that Alston testified that she never "s[aw] the victim of this
offense." (1) Again, appellant misstates the record when he argues that Alston never
testified that appellant said anything about robbing a man of his wallet at the park. (2) 
Appellant argues Alston never saw the wallet that was taken from complainant. 
However, the record reflects that Alston testified appellant had the wallet with him
when he got into the car, and she described it as a brown leather wallet. In addition,
appellant argues that on cross-examination Alston "maintained her story that . . . she
had never seen appellant with a gun and never knew appellant to handle or possess
a gun." (3) This is directly contrary to Alston's testimony at trial. Alston identified a
picture of the firearm at trial and testified she had seen it before and it belonged to
appellant.

 Also, appellant misstates the record when he argues that testimony of Alston
and Harris was the only evidence that the State had against appellant other than the
fact that he was found with the gun. Appellant fails to mention that the testimony of
Alston and Harris was corroborated by Angel Coleman, Angel testified that appellant
had blood on his hands and one shoe, there was DNA evidence linking appellant to
the firearm, and appellant told investigators he gave the Wells Fargo card to Harris.

 At trial, the jury was presented with two conflicting theories: the State's and
appellant's. In his defense, appellant offered an alibi that he was at his grandmother's
house around the time of the shooting. Appellant's cousin testified as an alibi
witness. His cousin said he remembered that day specifically because his little
brother went to buy books at school, but according to a school district calendar, the
school was not open to students on August 11, 2005. Thus, the jury was free to
disbelieve the cousin's testimony. See Lancon, 253 S.W.3d at 707 (holding the jury
may choose to believe some testimony and disbelieve other testimony). Similarly, the
jury was free to disbelieve the testimony of Vincent and Horn, the defense witnesses
whose trial testimony differed from statements given earlier to investigators. See id.

 Appellant continues to argue his own theory on appeal. However, the jury was
able to assess the credibility and demeanor of the witnesses who testified at trial, and
we cannot disturb their credibility determination on appeal. See id. at 705. (holding
that jury is in best position to judge credibility of witness, as opposed to appellate
court who relies on cold record). From the guilty verdict, it is clear that the jury
rejected appellant's exculpatory explanation. 

 Weighed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and unjust. See Laster, 275 S.W.3d at 518. Also, there is no objective
basis in the record to conclude that the great weight and preponderance of the
evidence contradicts the jury's verdict. Id. Thus, we find the evidence is factually
sufficient to support the jury's determination of guilt.

 We overrule appellant's second issue. 

B. Accomplice Witness Jury Instruction

 In his third and fourth points of error, appellant complains the trial court erred
in failing to instruct the jury regarding accomplice witness testimony. Specifically,
appellant claims the trial court committed reversible error by failing to instruct the
jury that Domonique Alston was an accomplice as a matter of law. Additionally,
appellant claims the trial court committed reversible error by failing to instruct the
jury that Geoffrey Harris was an accomplice as a matter of law or alternatively,
allowing the jury to determine if Harris was an accomplice as a matter of fact. The
trial court did give an accomplice-as-a-matter-of-fact instruction allowing the jury to
determine whether Alston was an accomplice. The charge instructed that, if the jury
found Alston to be an accomplice, the jury should not convict the defendant based on
her testimony, unless it found her testimony to be true, found other evidence in the
case tending to connect appellant with the offense charged in the indictment, and then
found from all the evidence beyond a reasonable doubt that appellant was guilty. See
Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The trial court did not give
the instructions appellant claims it should have given.


 1. Standard of Review for Jury Charges

 A claim of jury-charge error is reviewed using the procedure set out in
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). First, we determine
whether there is error in the charge. Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim.
App. 2005) (citing Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). 
If error exists and the appellant objected to the error at trial, reversal is required if the
error "is calculated to injure the rights of the defendant," which is defined to mean
that there is "some harm." Almanza, 686 S.W.2d at 171. If the error was not objected
to, it must be "fundamental" and will require reversal only if it was so egregious and
created such harm that the defendant "has not had a fair and impartial trial." Id. 
Under both standards, we look to the actual degree of harm in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole. Id. 

 2. Types of Accomplices

 An accomplice is an individual who participates with a defendant in the
commission of a crime by doing some affirmative act with the requisite culpable
mental state that promotes the commission of that offense. Cocke v. State, 201
S.W.3d 744, 748 (Tex. Crim. App. 2006) (citing Paredes v. State, 129 S.W.3d 530,
536 (Tex. Crim. App. 2004)). A defendant cannot be convicted upon the testimony
of an accomplice unless that testimony is corroborated by other evidence tending to
connect the defendant to the offense. See Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005). A witness may be an accomplice either as a matter of law or as a
matter of fact. Cocke, 201 S.W.3d at 747. The evidence in the case determines what
instruction, if any, is appropriate to give to the jury. Id. 

 3. Omission of Instruction on Accomplice as Matter of Law

 Appellant contends Harris and Alston were accomplices as a matter of law. As
a general rule, a person is an accomplice witness as a matter of law only when there
is uncontradicted evidence or evidence so persuasive a jury could not reasonably
disregard facts that conclusively make the witness guilty of the crime. Roseman v.
State, 382 S.W.2d 261, 263 (Tex. Crim. App. 1964). Additionally, there are
situations in which a person's status as an accomplice witness as a matter of law turns
not upon the evidence indicating guilt or innocence of the offense but rather upon the
witness's legal status. See Cocke, 201 S.W.3d at 747-48. A witness is an accomplice
as a matter of law if the evidence clearly shows that he, like the defendant, could be
prosecuted for the offense or a lesser-included offense. Id. Where a witness is under
indictment for or has been convicted of the same offense or a lesser included offense
on which the defendant is on trial, the witness is an accomplice witness as a matter
of law. Id.; see also Burns v. State, 703 S.W.2d 649, 651 (Tex. Crim. App. 1985). 

 Neither Harris nor Alston was an accomplice as a matter of law. With regard
to both Alston and Harris, the evidence is not uncontradicted or so persuasive that the
a jury could not reasonably disregard facts that conclusively make the witness guilty
of the crime. Furthermore, neither witness's legal status makes him or her an
accomplice as a matter of law: neither Harris nor Alton was charged with capital
murder, murder, or robbery arising out of the transaction. See Roseman, 382 S.W.2d
at 263. Harris was found guilty of credit card abuse, but that offense is not a lesser-included offense of capital murder, as it shares none of the same elements as capital
murder. See Tex. Penal Code Ann. § 19.03 (Vernon 2003), § 32.31 (Vernon Supp.
2009). Thus, we conclude that the trial court did not err in failing to provide an
instruction regarding Harris and Alston as accomplices as a matter of law.

 4. Omission of Instruction on Accomplice as Matter of Fact

 Appellant also contends that Harris was an accomplice as a matter of fact,
entitling him to an instruction allowing the jury to determine if Harris was an
accomplice. 

 Upon a timely request, the trial court is required to instruct the jury on any
defensive issue raised by the evidence at trial, whether that evidence is weak or
strong, unimpeached or contradicted, and regardless of what the trial court may think
about the credibility of the evidence. Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007); Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The trial
judge should include an instruction to allow the jury to decide whether a witness is
an accomplice if the evidence is conflicting and it is unclear whether a witness is an
accomplice. Druery v. State, 225 S.W.3d 491, 498-99 (Tex. Crim. App. 2007). The
instruction should define the term "accomplice," and instruct the jury on how to treat
the testimony if it finds the witness to be an accomplice. Id. 

 An imperfect objection to the proposed charge is sufficient to preserve error if
the record demonstrates that the trial judge understood appellant's request to
encompass the matters about which appellant now complains. Bennett v. State, 235
S.W.3d 241, 243 (Tex. Crim. App. 2007). The defendant need not invoke any "magic
words" in the jury charge request, as long as it is enough to bring the issue to the
court's attention. Id 

 The record of the charge conference does not reflect an objection or request for
the inclusion of an accomplice witness instruction. The record shows, however, that
trial counsel did object and that the trial court did overrule the objection. At a hearing
before the trial court following the trial, the trial court acknowledged on the record
that appellant's attorney did make a timely objection before the charge was read to
the jury, but the objection was inadvertently left off the record. Appellant requested
an "accomplice witness rule instruction as a matter of law as to both Geoffrey Harris
and Domonique Alston" and "alternately, an accomplice rule jury instruction as to
Geoffrey Harris and Domonique Alston as a matter of fact." The court included an
instruction allowing the jury the option of making a finding as to whether or not
Alston was an accomplice. With regard to the requested instructions as to Harris, the
court found that "the facts did not raise him as an accomplice in fact or at law." The
court's inclusion of the Alston instruction in the charge indicates that the court
understood appellant's request and that the request was timely made. Thus, error was
sufficiently preserved. See id.

 Error in the charge, if subject to a timely objection, requires reversal if the error
is "calculated to injure the defendant's rights," meaning there is "some harm."
Almanza, 686 S.W.2d at 171. Appellant must have suffered actual, rather than
merely theoretical, harm from the error. Warner v. State, 245 S.W.3d 458, 463 (Tex.
Crim. App. 2008). 

 Assuming without deciding that the trial court erred by not including an
accomplice witness instruction as to Harris, we proceed to a harm analysis. Here,
appellant made a timely objection so we apply the "some harm" standard. 

 A court's failure to submit an accomplice-as-a-matter-of-fact instruction may
amount to harmless error if some non-accomplice evidence exists tending to connect
the accused to the offense. Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App.
2002). Under such circumstances the omission of the instruction is harmless because
its purpose has been fulfilled. Id. The purpose of the instruction is not to cast
suspicion on the testimony provided by the accomplice or to encourage jurors to give
it less weight than other testimony. Cocke, 201 S.W.3d at 747. Rather, the
instruction merely reminds the jury that it cannot use the accomplice's testimony to
convict the defendant unless there also exists some non-accomplice testimony tying
the defendant to the offense. Id. (citing Herron, 86 S.W.3d at 632). 

 In determining the strength of a particular item of non-accomplice evidence,
we examine (1) its reliability or believability and (2) the strength of its tendency to
connect the defendant to the crime. Herron, 86 S.W.3d at 632. Under the "some
harm" standard, the reliability inquiry may be satisfied if: (1) there is non-accomplice
evidence, and (2) there is no rational and articulable basis for disregarding the
non-accomplice evidence or finding that it fails to connect the defendant to the
offense. Id. Additionally, the weakness of the evidence of accomplice status may
affect the harm analysis. See Medina v. State, 7 S.W.3d 633, 643 (Tex. Crim. App.
1999) (finding failure to include accomplice as a matter of fact instruction harmless
under the "some harm" standard where there was a substantial amount of
non-accomplice evidence and the evidence of the witness's accomplice status was
tenuous and barely enough to support submission as an accomplice as a matter of
fact). 

 The jury was given an instruction regarding Alston as an accomplice as a
matter of fact. Because the jury was not asked disjunctively whether it found Alston
to be an accomplice, we cannot tell from the verdict whether the jury found her to in
fact be an accomplice. The testimony of one accomplice may not corroborate the
testimony of another accomplice. Chapman v. State, 470 S.W.2d 656, 662 (Tex.
Crim. App. 1971). We conduct our harm analysis assuming both Alston and Harris
are accomplices.

 Even without the testimony of Alston and Harris, there is substantial evidence
of appellant's guilt, including:


 
 Angel Coleman's testimony corroborated Alston and Harris's accounts
of the conversation between Harris and appellant, in which appellant
admitted to shooting a man in the park because he would not give up his
wallet.

 Angel Coleman testified that appellant came over to the apartment she
shared with Harris and saw appellant with a gun and a brown wallet. 

 Angel Coleman testified she saw blood on appellant's shoes and fingers.

 The pistol used in the offense was found with appellant's belongings at
his mother's home.

 Live and spent cartridges matching the pistol were found in appellant's
backpack.

 Appellant admitted to HPD officers that the pistol used in the offense
was his gun and that he intended to wipe the pistol clean of fingerprints
before getting rid of it.

 Appellant admitted to investigators that he gave the debit card to Harris.

 The blue bandanna wrapped around the pistol contained traces of DNA,
and appellant could not be excluded as a contributor of the DNA.

 When appellant believed the police were coming to arrest him at his
mother's home, he fled from the apartment and was later apprehended
hiding under a bed at the mother of his child's home. 
 



Additionally, the evidence of Harris's accomplice status is tenuous at best, further
indicating the error was harmless. See Medina, 7 S.W.3d at 643 (holding that failure
to give accomplice jury instruction was harmless under the "some harm" standard
where there was substantial evidence of guilt and the evidence of accomplice status
was weak).

 Taken together, rational jurors could conclude that evidence, excluding Harris
and Alston's testimony, sufficiently tended to connect appellant with the commission
of the crime. Here the corroborating evidence of guilt is sufficient to find that the
failure to instruct the jury was harmless. Any error the trial court may have
committed in failing to give the requested instruction was not harmful.

 Because we find that the trial court did not err in not providing a jury
instruction regarding Harris and Alston as accomplices as a matter of law and that any
err in failing to instruct the jury regarding Harris as an accomplice as a matter of fact
was harmless, we overrule points three and four.

Conclusion

 Having overruled appellant's four points on appeal, the judgment of the trial
court is affirmed. 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b). 
1. Alston testified that she remembered that a man walked by appellant and her as he was
entering the park. She testified that the man was alone and came from the direction of the
parking area.
2. Alston testified that, in the car, "He spoke first," and "He just said he had the wallet from the
man in the park."
3. While it is true that Alston told a private investigator hired by appellant that she never knew
appellant to have a gun, she testified at trial that she lied to the investigator to protect
appellant.