**Opinion filed January 26, 2012**



# In The

# Eleventh Court of Appeals

———————

## No. 11-10-00022-CR

———————

## DONALD SCHNIDT, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR34370**

## O P I N I O N

The jury convicted Donald Schnidt of aggravated robbery. The trial court assessed his punishment at confinement for a term of sixteen years in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine of $5,000. Appellant challenges his conviction in four issues. We affirm.

### *Background Facts*

Robert Trabant testified that he, Brian Green, and appellant traveled together in Trabant's pickup to the home of Edwin Burger on the morning of November 19, 2007. Trabant, Green,

and appellant lived together at the time in a travel trailer owned by Green's father. Trabant and Green knew Burger as a result of doing yard work for him on previous occasions. Trabant testified that the three of them went to Burger's home for the purpose of taking Burger's cocaine.[1] Burger invited Trabant, Green, and appellant inside his home. Trabant testified that, after they entered the home, Green and appellant began assaulting Burger. He specifically testified that appellant kicked Burger in the stomach. Trabant went through Burger's house looking for things to steal while Green and appellant assaulted Burger. Trabant testified that they stashed items stolen from Burger's home in a barn owned by Green's father.

In addition to calling Trabant as a witness, the State also offered the testimony of Federico Chavez. Chavez was incarcerated with appellant at various times prior to trial. Chavez testified that appellant told him an account of the assault and robbery of Burger that was similar to Trabant's version of the events.

Green offered a different version of the events in his testimony during appellant's case-in-chief. He testified that he, Trabant, and appellant all went to Burger's house on November 19, 2007, but that he was the only person that assaulted Burger. Green stated that appellant did not "encourage," "assist," or "command" him to assault Burger. On cross-examination by the prosecutor, Green acknowledged that he had already pleaded guilty to the offense of aggravated robbery for his role in the incident. Green also testified that he did not like Trabant "anymore" because he considered Trabant a "snitch" because Trabant talked to the authorities about what happened to Burger on the next day when they were apprehended.

Burger died prior to trial as a result of natural causes. However, he was never able to provide police with details of the attack because of the severity of his injuries as a result of the assault. One of Burger's friends found him in his home on the night of the assault lying on the floor in a pool of blood. Detective Sheldon Johnson of the Midland Police Department testified that Burger's house had been ransacked.

Green, Trabant, and appellant remained together for the remainder of the day after the assault and that night. The next morning, Green and appellant went to the Kent Kwik convenience store in Gardendale. A clerk working at the store testified that appellant entered the store and purchased beer, deli items, grocery items, and gasoline. Appellant used a credit card that belonged to Burger to make the purchase. As set forth in greater detail below, Green,

---

[1]Other than Trabant's testimony, there is no evidence that Burger possessed any cocaine.

Trabant, and appellant were apprehended as a result of suspicions on the part of the clerks at the convenience store with regard to appellant's use of the credit card.

*Sufficiency of the Evidence*

Appellant challenges the legal and factual sufficiency of the evidence in his first and second issues. We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[2] legal-sufficiency standard and the *Clewis*[3] factual-sufficiency standard"; that the Jackson v. Virginia standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including Clewis, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review appellant's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

In conducting a legal sufficiency review, we are required to defer to the jury's role as the sole judge of the credibility of the witnesses and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant couches his first issue as a challenge to the legal sufficiency of the evidence. However, he directs the bulk of his argument in support of this issue to the corroboration requirements for accomplice-witness testimony and the testimony of a "jailhouse informant" under TEX. CODE CRIM. PROC. ANN. art. 38.075 (West Supp. 2011), art. 38.14 (West 2005). The accomplice-witness rule has been in existence for a number of years. It provides as follows:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Article 38.14. The corroboration requirement for the testimony of a jailhouse informant has only existed since 2009 with the adoption of Article 38.075. It provides as follows:

> (a) A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. In this subsection, "correctional facility" has the meaning assigned by [TEX PENAL CODE ANN. § 1.07 (West Supp. 2011)].

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows that the offense was committed.

The standard for conducting a sufficiency review under the accomplice-witness rule is well-known. *See Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). However, the standard for conducting a sufficiency review under the jailhouse information statute has not been firmly established given its recent enactment. The Waco court of appeals held in *Watkins v. State*, 333 S.W.3d 771, 778 (Tex. App.—Waco 2010, pet. ref'd), that the standard required for corroboration of jailhouse informant testimony under Article 38.075 is the same as that required for corroboration of accomplice-witness testimony under Article 38.14. We find the reasoning of the Waco court persuasive and conclude that the standard for corroboration of jailhouse informant testimony under Article 38.075 is the same as the standard for corroboration of accomplice-witness testimony under Article 38.14.

4

In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). "Tendency to connect," rather than rational sufficiency, is the standard: the corroborating evidence need not be sufficient by itself to establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The accomplice-witness rule is not based upon federal or state constitutional notions of sufficiency; there simply needs to be "other" evidence tending to connect the defendant to the offense. *Cathey*, 992 S.W.2d at 462–63. Accordingly, a review under the accomplice-witness standard differs from a review of the evidence for legal sufficiency. *Id*.

After eliminating the testimony from Trabant and Chavez from our consideration, we conclude that there is evidence connecting appellant with the commission of the aggravated robbery of Burger. The remaining direct and circumstantial evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith*, 332 S.W.3d at 442. As noted by the State, there is no dispute that appellant used Burger's credit card on the morning after the robbery. This is ample evidence connecting appellant to the crime of aggravated robbery. "[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id*. at 443 (quoting *Richardson v. State*, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993)). Additionally, a defendant's behavior or actions prior to or following an offense may tend to connect the defendant with the commission of the offense. *Id*. at 445. Moreover, it is a well-settled rule that a defendant's unexplained possession of property recently stolen permits an inference that the defendant is the one who committed the theft. *See Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

Appellant premises the remainder of his evidentiary contentions on the conflicting accounts offered by Trabant, Chavez, and Green; the lack of physical evidence to place appellant at the crime scene; and the lack of proof he assisted his accomplices under the law of parties. As the sole judge of the credibility of the witnesses, it was the jury's role to weigh the credibility of

the witnesses' testimony and resolve the conflicts in the evidence. In this regard, Trabant testified that appellant physically assaulted Burger during the robbery. It was within the jury's province to accept this evidence as the credible account of what transpired at Burger's house. Furthermore, it was well within the jury's right to reject Green's account. Reviewing all of the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. There is sufficient evidence to support appellant's conviction as a principal actor. Accordingly, we need not consider the sufficiency of the evidence under the law of parties. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (When multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support conviction for one of the theories submitted to the jury.). Appellant's first and second issues are overruled.

*Motion to Suppress*

Appellant asserts in his third issue that the trial court erred in overruling his motion to suppress a recorded statement that he gave to the police soon after being apprehended. As noted previously, the convenience store clerks were concerned that appellant was using someone else's credit card. They based this concern on the fact that appellant did not resemble Burger's photograph on the credit card. A clerk asked appellant for the card after he used it, but appellant told the clerk he no longer possessed it. The clerk wrote down the license plate number of the vehicle and a physical description of appellant. The clerk then contacted the Midland County Sheriff's Department to report the matter. The manager of the convenience store subsequently provided Deputy Gabriel Subia with a receipt for appellant's purchases, the written descriptions, and a surveillance video of appellant. After making an inquiry, Deputy Subia learned that the Midland Police Department was investigating the aggravated robbery of Burger.

On the same day that appellant used Burger's credit card, one of the clerks at the convenience store in Gardendale contacted law enforcement to report that she was following the pickup that appellant used for traveling to the convenience store. State Trooper Travis McRee received a radio report from DPS communications to the effect that the pickup had been spotted in the Gardendale area, that the three occupants had used a stolen credit card at the convenience store, and that they were suspects in an aggravated robbery occurring on the previous day. Trooper McRee observed the vehicle stopped at a stop sign. He began following the vehicle to

allow other officers to arrive for assistance. He testified that he based his decision on the radio report that the occupants may have been involved in an aggravated robbery and the fact that he did not want to attempt to apprehend three suspects by himself. However, the pickup pulled over to the side of the road without being stopped by Trooper McRee. He pulled in behind the pickup, activated his red and blue flashing lights, and "conducted a felony stop" by drawing his handgun and ordering each suspect out of the vehicle individually. He ordered each of them to lie down on the ground in a prone position, after which he began handcuffing them. Another officer soon arrived and assisted him in handcuffing the suspects.

Detective Manny Beltran of the Midland Police Department spoke with appellant at the scene of the arrest. Detective Beltran stated that appellant informed him that appellant would give him a statement because "he had nothing to hide." Detective Beltran subsequently transported appellant to the Midland Police Department where he conducted a recorded interview of appellant. Detective Beltran gave appellant *Miranda*[4] warnings before conducting the interview because appellant was "under detention." Appellant advised Detective Beltran that he understood his rights and that he was willing to waive them in order to give a statement. Detective Beltran denied threatening or coercing appellant with regard to his statement. He also testified that he did not promise anything to appellant in exchange for his statement and that he did not deny appellant any basic necessities prior to taking the statement. Detective Beltran testified that, while he detected the smell of beer on appellant's breath, appellant did not appear to be under the influence of any narcotic drug or alcoholic beverage.

Based upon its previous ruling overruling appellant's motion to suppress the recorded statement, the trial court allowed its admission at trial. In the statement, appellant acknowledged using Burger's credit card. He told Detective Beltran that he obtained the credit card from two women named Amanda and Samantha. Green denied knowing anything about Amanda or Samantha.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

7

the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). When, as here, no findings of fact were requested or filed, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Valtierra*, 310 S.W.3d at 447; *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Appellant first contends that his statement was unlawfully obtained because the police did not have probable cause to arrest him. Assuming arguendo that appellant was under arrest, we conclude that the police had probable cause to do so. Probable cause is a requirement for a warrantless arrest by police. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). Probable cause to arrest exists where the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Hughes*, 24 S.W.3d at 838; *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). When more than one officer is involved in investigating a crime, the sum of information known to cooperating officers at the time of the arrest is to be considered in determining whether probable cause to arrest existed. *Garrison v. State*, 726 S.W.2d 134, 137 (Tex. Crim. App. 1987); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1984); *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Detective Johnson testified at the suppression hearing that dispatch patched directly to his cell phone the telephone call of the convenience store clerk who subsequently observed the suspect vehicle. She told him that she had observed "the same person and vehicle" that had used Burger's credit card at the convenience store earlier that day. The "same person" was a direct reference to appellant and his use of the victim's credit card. The trial court had sufficient

evidence to conclude that the police had reasonably trustworthy information to believe that appellant had at least committed credit card abuse at the time Trooper McRee apprehended him.

Appellant additionally contends that his statement was not voluntary for two reasons: (1) it was the product of coercion because Detective Beltran told him that he was not free to leave and (2) he was not fully aware of the rights he waived because of his intoxication. A defendant's statement may be used in evidence against him if the defendant made it freely and voluntarily and without compulsion or persuasion. TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). "The determination of whether a confession is voluntary is based on an examination of the totality of circumstances surrounding its acquisition." *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995)). Intoxication is one of many factors considered in determining whether a confession is voluntary, but intoxication does not render a confession involuntary per se. *See Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). To render a confession involuntary, the intoxication must render the defendant incapable of making an independent, informed decision to make a statement. *Id*. A statement may also be involuntary "if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (quoting *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)).

Under the applicable standard of review, we presume that the trial court found that Detective Beltran did not coerce the statement from appellant and that appellant was not intoxicated. The record supports these findings and conclusions based upon Detective Beltran's testimony. Coercion and intoxication are matters that rely heavily on a determination of the witnesses' credibility. Our standard of review requires nearly total deference to factual determinations that depend on credibility. *See Valtierra*, 310 S.W.3d at 447. We conclude the evidence adduced at the suppression hearing supports the trial court's findings, and we hold that the trial court properly applied the law to those facts in denying appellant's motion to suppress. Appellant's third issue is overruled.

*Charge on the Law of Parties*

In his fourth issue, appellant contends that the trial court erred by instructing the jury on the law of parties for multiple reasons. "A person is criminally responsible as a party to an

9

offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A person is criminally responsible for the conduct of another if he acts with intent to promote or assist the commission of the offense and he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). When a party is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).

An instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). However, when the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *Id*. at 564–65. In the present case, even if the trial court erred in instructing the jury on the law of parties, the error was harmless because the evidence clearly supports appellant's guilt as a principal actor. Accordingly, appellant's fourth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

January 26, 2012

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[5]

---

[5]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.