

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00203-CR

**RYAN MITCHELL JAHN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2020-1323-C2

## MEMORANDUM OPINION

Appellant, Ryan Mitchell Jahn, challenges his conviction for burglary of a habitation. *See* TEX. PENAL CODE ANN. § 30.02. In three issues, Jahn contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court erred by failing to sua sponte instruct the jury that State's witness, Anastasia Guillory-Hunt, was an accomplice witness as a matter of law; and (3) the trial court erred by failing to sua sponte instruct

the jury that State's witness, Kristie Andrades, was an accomplice witness as a matter of law. Because we overrule all of Jahn's issues, we affirm.

## Accomplice-Witness Instructions in the Jury Charge

In his second and third issues, Jahn complains that Guillory-Hunt and Andrades were accomplices as a matter of law and that the trial court erred by failing to include sua sponte an accomplice-witness instruction in the guilt-innocence charge.

STANDARD OF REVIEW

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).

APPLICABLE LAW

The accomplice-witness corroboration statute, article 38.14 of the Texas Code of Criminal Procedure, provides that: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.14. The Court of Criminal Appeals has construed this statute such that the testimony of one accomplice witness cannot corroborate that of another. *See Chapman v. State*, 470 S.W.2d 656, 660 (Tex. Crim. App. 1971). The Court of Criminal Appeals has also held that a jury-charge

instruction is required when the situation exists. *See Fields v. State*, 426 S.W.2d 863, 865 (Tex. Crim. App. 1968).

An accomplice-witness instruction does not say that the jury should be skeptical of accomplice-witness testimony. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Nor does it tell the jury that such testimony should receive less weight than other evidence. *Id*. Rather, the instruction informs the jury that it cannot use the accomplice-witness testimony unless there is also some non-accomplice-witness evidence connecting the defendant to the offense. *Id.* Once it is determined that such non-accomplice-witness evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the jury's decision-making. *Id.* Thus, non-accomplice-witness evidence can render harmless a failure to submit an accomplice-witness instruction by fulfilling the purpose an accomplice-witness instruction is designed to serve. *Id.*

"[A] harm analysis for the omission of an accomplice witness instruction should be flexible, taking into account the existence and strength of any non-accomplice evidence and the applicable standard of harm." *Id.* We examine the strength of non-accomplice-witness testimony by its reliability or believability and by the strength of its tendency to connect the defendant to the crime. *Id.* The reliability inquiry is satisfied when there is non-accomplice-witness evidence, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect the defendant to the offense. *Id.* at 633.

The applicable standard of harm depends upon whether the defendant preserved error by bringing the improper omission to the trial court's attention. *Id.* at 632. When the defendant has failed to preserve error, as is the case here, the harm must be egregious. *Id.*

It is undisputed that the trial court did not include an accomplice-witness instruction in the guilt-innocence charge. Furthermore, the parties agree that it was error to not include an accomplice-witness instruction in the guilt-innocence charge. However, assuming, without deciding, that it was error to not include an accomplice-witness instruction, we cannot say that Jahn was harmed.

Christopher Sutton testified he saw a man, later identified as Jahn, at Kurtis Heady's house on the day in question. He also saw a "van parked in front of the house, backed up towards the porch area." Sutton spoke with Jahn, and Jahn told Sutton that he was hired to clean the property. When Sutton asked about a car part that Heady had left at the house, Jahn indicated that the part had already been "hauled away but he would look towards bringing it back or—and bringing it to me." Jahn's comments were suspicious to Sutton, so Sutton called Heady and informed him about what was happening at the house. Heady called law enforcement.

McLennan County Sheriff's Deputies Glenn Kennedy and Brandon Paranuk responded to the 911 call and located Jahn at the house. Upon arrival, Deputy Kennedy observed Jahn with "something in his hand. As soon as he literally saw me, he turned

and walked back into the residence." Jahn then exited from the back of the residence. Deputy Kennedy ordered Jahn "to come to me," but Jahn "was trying to hide . . . ." The Deputies searched the vehicle parked in front of the house and observed that it "was completely full from front to back . . . ." Deputy Kennedy also noticed that the back door to the residence "appeared where it has been broken into, the lock itself, locking mechanism was broken," and the door was open. While searching inside, Deputy Kennedy saw the residence was in disarray, but the refrigerator had food and there were drinks scattered about inside that were not Heady's. Law enforcement later confirmed that Jahn was not supposed to be inside the residence.

Heady confirmed that he had received a call from Sutton "stating that somebody was moving stuff out of my house." Heady had given Sutton, and no one else, permission to be at the house that day. Heady also noted that he had not given anyone permission to clean or remove items from the house. When shown pictures of the backdoor of the house, Heady noticed that "the door frame is separated, so blunt force was used to open that back door." Heady later identified numerous personal belongings that were inside the van, including a karaoke unit, a microwave, miscellaneous boxes, collectable dolls, a John Wayne Monopoly board game, sheets, a cup, a wedding ring, miscellaneous clothes, tools, Lucchese boots, and a DVD player, among other things. Several other items, including three televisions, a leather jacket, and pool cues were missing from the house and were later discovered being sold on Facebook Marketplace. Heady also recognized

an identification card belonging to Jahn that was found inside the van and described the card as "a driver's license of one of the people in my house."

Deputy Paranuk recounted that he interviewed Jahn at the scene and that Jahn told him that Eddie Martinez hired him to clean the residence. Jahn provided Deputy Paranuk with Martinez's phone number. Deputy Paranuk tried to call Martinez, but he "never received an answer or anything like that." Deputy Paranuk then spoke with Heady, who stated that Jahn did not have permission to be at the house.

The above evidence shows that Jahn was present at the house when items were being removed from the house. *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." (internal citations omitted)). Furthermore, Jahn's identification card was found inside the van that was backed up to the porch of the house and contained many of the items taken from Heady's house. Moreover, law enforcement recounted that Jahn tried to hide when they arrived and provided a false explanation for his presence at the house with Heady's belongings. *See Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977) (noting that the record must demonstrate that a defendant's explanation for his possession of stolen property is false or unreasonable and that the falsity or unreasonableness may be shown by circumstantial evidence to be resolved by the trier of

fact); *see also Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd) (noting that evidence of attempting to flee is admissible and may indicate a consciousness of guilt). Furthermore, Jahn admitted to "hauling away" Heady's property, and Heady stated that Jahn did not have permission to be at the house.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that this evidence tends to connect Jahn to the offense, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect Jahn to the offense. *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) ("To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. . . . There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; '[e]ach case must be judged on its own facts.'" (citation omitted)); *Herron*, 86 S.W.3d at 632; *see also Negrete v. State*, No. 04-20-00212-CR, 2021 Tex. App. LEXIS 5968, at *8 (Tex. App.—San Antonio July 28, 2021, no pet.) (mem. op., not designated for publication) ("We review evidence corroborating accomplice-witness testimony in the light most favorable to the jury's verdict." (citation omitted)); *Barnes v. State*, No. 04-13-00346-CR, 2014 Tex. App. LEXIS 13163, at **7-8 (Tex. App.—San Antonio Dec. 10, 2014, pet. ref'd) (mem. op., not designated for publication) ("The 'tends-to-connect' standard does not present a high threshold."). Thus, the purpose of a proper accomplice-witness instruction was fulfilled. *See Herron*, 86 S.W.3d at 632 ("Under the egregious harm standard, the omission of an

accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).  As such, the purported error by the trial court in failing to provide an accomplice-witness instruction in the guilt-innocence charge was harmless.  *See id.*  We overrule Jahn's second and third issues.

## Sufficiency of the Evidence

In his first issue, Jahn argues that the evidence is insufficient to prove that he had intent to commit theft at the moment he first entered the house in question.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  We may not re-weigh the evidence or substitute our judgment for that of the factfinder.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence.  *Villa*, 514 S.W.3d at 232.  Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at

trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

DISCUSSION

Jahn was indicted for burglary of a habitation with intent to commit theft. A person commits the offense of burglary of a habitation if, without the consent of the owner, the person enters the habitation and commits or attempts to commit a felony, theft, or assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *see also Reyes v. State*, 422 S.W.3d 18, 23-24 (Tex. App.—Waco 2013, pet. ref'd). A person commits theft if "he unlawfully

appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). "Where the charge is burglary with intent to commit theft, the offense is complete if the entry is made with the requisite intent, regardless of whether a theft is actually committed." *Martinez v. State*, 304 S.W.3d 642, 658 (Tex. App.—Amarillo 2010, pet. ref'd). Thus, intent to commit theft is a necessary element of the crime for which Jahn was charged. *See McGee v. State*, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("Intent, as an essential element of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise."). "Intent can be inferred from acts, words and conduct of the accused, and is to be resolved by the trier of fact from all of the facts and the surrounding circumstances." *Rodriguez v. State*, 793 S.W.2d 744, 748 (Tex. App.—San Antonio 1990, no pet.). "[T]he events of a burglary may imply the intent with which the burglar entered." *Caballero v. State*, 292 S.W.3d 152, 155 (Tex. App.—San Antonio 2009, pet. ref'd).

As stated earlier, Sutton observed Jahn at Heady's house. Sutton also saw Anastasia Guillory-Hunt and caught Jahn in the act of removing items from Heady's house. A van, which was stuffed full of items, was backed up to the porch of the house. Heady identified many of the items in the van as his. In addition, Jahn's identification card was found inside the van. When officers arrived, they discovered that the backdoor to Heady's house was broken open and that Jahn attempted to hide. Heady recounted

that no one, other than Sutton, had permission to be at the house that day, and he denied hiring anyone to clean out the house.

Additionally, Andrades testified that prior to Jahn's arrest, Jahn and Guillory-Hunt unloaded a vanload of property stolen from Heady's house at Andrades's house. When shown pictures of items stolen from Heady's house, Andrades recognized several of the items as having been unloaded from the van by Jahn and Guillory-Hunt. Police recovered items dropped off at Andrades's house and confirmed that they had come from inside Heady's house.

Guillory-Hunt testified that she was at the house with Jahn that day and that she participated in burglarizing the house. In fact, she is currently serving a prison sentence for doing so. Guillory-Hunt further noted that she occasionally spent the night at Heady's house and that she and others removed property from the house. According to Guillory-Hunt, she and Jahn removed televisions and pool cues from Heady's house and pawned them. She and Jahn removed numerous other items from the house on different occasions and took many of those items to Andrades's house. Guillory-Hunt also admitted that she and Jahn lied to police when they were questioned about why they were at the house that day. Specifically, Guillory-Hunt stated that, contrary to Jahn's statement to police, Eddie Martinez was never involved in cleaning out or staying at Heady's house.

On appeal, Jahn argues that his conviction for burglary of a habitation cannot be sustained unless the evidence proves that he intended to commit theft when he entered Heady's house the first time. In other words, as long as Jahn initially entered the house to stay, he cannot be convicted of burglary of a habitation regardless of how many times he subsequently came and went from the house to steal property. In making this argument, Jahn relies on evidence showing that he occasionally spent the night at Heady's vacant house.

Jahn ignores evidence that each and every time he entered Heady's house, he did so without consent. *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (stating that the "allowable unit of prosecution in a burglary is the unlawful entry"); *see Byrd v. State*, 336 S.W.3d 242, 251 n.43 (Tex. Crim. App. 2011) ("The gravamen of the offense normally dictates the number of allowable units of prosecution." (citation omitted)); *see also Blake v. State*, No. 06-11-00097-CR, 2012 Tex. App. LEXIS 926, at *3 n.7 (Tex. App.—Texarkana Feb. 2, 2012, pet. ref'd) (mem. op., not designated for publication) (noting that each unit of prosecution is a separate offense) (citing *Cosio v. State*, 353 S.W.3d 766, 774 (Tex. Crim. App. 2011)). Moreover, Jahn does not dispute that he repeatedly entered the house and removed vanloads of Heady's property from inside the house. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could find beyond a reasonable doubt that Jahn entered Heady's house on numerous occasions without Heady's permission with the intent to commit theft.

Accordingly, we hold that the evidence is sufficient to support Jahn's conviction for burglary of a habitation.  We overrule his first issue.

## Conclusion

Having overruled all of Jahn's issues, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Smith,
    and Justice Rose[1]
Affirmed
Opinion delivered and filed January 25, 2024
Do not publish
[CRPM]



---

[1] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.